T.C. Summary Opinion 2008-40

UNITED STATES TAX COURT

RANDALL G. AND SHERYL S. KNOWLES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9401-06S.                Filed April 21, 2008.


Randall G. and Sheryl S. Knowles, pro se.

<u>Peter N. Scharff</u>, for respondent.


HALPERN, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

---

[1]  Hereafter, unless otherwise noted, all section references
are to the Internal Revenue Code in effect for the years in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.  All dollar amounts have been rounded to
the nearest dollar.

this opinion shall not be treated as precedent for any other case.

By notice of deficiency, respondent determined deficiencies in petitioners' Federal income taxes of $1,565 and $3,174 for their taxable (calendar) years 1999 and 2000, respectively. The issues for decision concern certain amounts petitioners deducted in computing petitioner Randall Knowles's net profit from his sole proprietorship.

## Background

### Introduction

Petitioner Sheryl Knowles was married to Mr. Knowles throughout 1999 and 2000. During those years, Mr. Knowles was the sole proprietor of an insurance sales business (the business).

In September 1991, Mr. and Ms. Knowles signed an employment contract (the employment contract) effective September 1, 1991. Among other things, the employment contract provides that Ms. Knowles is employed to be an office manager and for accounting services, she is to be paid $200 a month, and Mr. Knowles is to establish a medical reimbursement plan.

On September 1, 1991, Mr. Knowles executed the plan document for a medical reimbursement plan (the medical plan) effective that date. All employees were eligible to participate in the medical plan. Under the terms of the medical plan, eligible

employees are entitled to reimbursement for certain medical expenses they incur, including major medical and hospital insurance premiums for the employee and family, accident insurance premiums for the employee only, and uninsured medical expenses, without specifying whether for the employee or the employee and family.

On September 2, 1991, Ms. Knowles executed an employee application provided by Mr. Knowles for the medical plan, electing to be covered for major medical insurance premiums for employee and family, accident insurance premiums for employee only, and uninsured medical expenses, without specifying whether for the employee or the employee and family. On that same date, Mr. Knowles executed a document, "Change of Primary Policyholder", directed to Life Investors, regarding Health Insurance Policy No. 110-011546701 (the Life Investors policy), changing the name of the primary policyholder from himself to Ms. Knowles and listing himself as "dependent".

Mr. Knowles executed a revised plan document for the medical plan effective January 1, 1997, under which only full-time employees are eligible to participate in the medical plan. Full-time employees are defined as employees who work 20 hours or more a week.

In 1999 and 2000 Mr. Knowles paid the premiums for a medical insurance policy (the medical policy) that covered both him and Ms. Knowles.

During 1999 Mr. Knowles was insured under a disability insurance policy (the disability policy) providing monthly payments if Mr. Knowles was disabled and unable to work. Mr. Knowles paid the premiums for the disability policy in 1999.

Mr. Knowles did not track or record any hours that Ms. Knowles worked for him during 1999 or 2000.

In 1999 and 2000 petitioners maintained one joint checking account for which Ms. Knowles was the primary account holder. Petitioners used this account both for personal and business purposes. Among the items shown in that account for 1999 and 2000 are payments to Life Investors for premiums. Similarly, in 1999 and 2000 petitioners maintained one joint credit card account that was used to pay both personal and business expenses.

Ms. Knowles received no paychecks from Mr. Knowles in either 1999 or 2000.

During 1999 and 2000 Ms. Knowles was employed full time by Montana State University.

Schedule C Deductions

For both 1999 and 2000 petitioners reported Mr. Knowles's profit from the business on a Schedule C, Profit or Loss From

Business, attached to their Form 1040, U.S. Individual Income Tax Return.

On the 1999 Schedule C petitioners deducted $1,788 for disability policy premiums, $2,020 for medical policy premiums, and $3,005 for wages paid to Ms. Knowles.

On the 2000 Schedule C petitioners deducted $2,614 for medical policy premiums, $8,078 for out-of-pocket medical expenses, and $3,120 for wages paid to Ms. Knowles.

Tax Reporting

Forms W-2, Wage and Tax Statement, issued by Mr. Knowles reported that Ms. Knowles received wages of $2,980 and $3,120 from him in 1999 and 2000, respectively. Petitioners included those amounts in gross income on their Forms 1040. Mr. Knowles paid Social Security and Medicare taxes on the wages reported for Ms. Knowles.

## Discussion

Wages and Medical Expenses

Respondent argues that the wages attributed to Ms. Knowles were not ordinary and necessary expenses of the business in 1999 and 2000 because Ms. Knowles was not a bona fide employee. Respondent claims that the wages and medical expenses are not an ordinary and necessary business expense because Ms. Knowles was not a bona fide employee of Mr. Knowles in those years. Respondent further claims that, even if Ms. Knowles was a bona

fide employee, the medical expenses are not an ordinary and necessary business expense because Ms. Knowles did not work at least 20 hours a week in 1999 and 2000 as required to be covered by the medical plan. Finally, respondent claims that, if Ms. Knowles was otherwise eligible to receive benefits under the medical plan, petitioners have failed to prove that Ms. Knowles paid or incurred medical expenses in 1999 and 2000 for which she was reimbursed by the medical plan.

Mr. Knowles testified convincingly as to his wife's duties as his employee under the employment contract:

> She categorizes expenses for the preparation of Federal and state tax returns. Reports data using Quicken computer software. Provides counsel on business decisions. Verifies deposits. Reconciles the business checkbook. Reconciles credit card statements. Schedules invoice payments. Escorts * * * [me] to business meetings and conferences. Chauffeurs * * * [me] to business meetings and CLE Institutes. Prepares data for CPA and other office duties as assigned. She also acts as the medical plan administrator and performs various duties such as processing claims and maintaining records. * * * [she entertains] clients through luncheons and dinners hosted at the office. The maintenance and physical upkeep of the 900 square foot office and conference area are also part of her responsibilities, and she used vacation time from her * * * [Montana State University job] to perform some of these duties.

Ms. Knowles also testified convincingly as to her duties. She explained that, since she and Mr. Knowles maintained only one checking account for their personal and the business expenses, it made no sense for Mr. Knowles to write wage checks to her on that account that she would then deposit back into the account. While

we understand her reasons for that practice, it clouds a situation that requires us to determine whether Ms. Knowles was an employee in Mr. Knowles's business. Mr. Knowles did, however, report Ms. Knowles's wages for withholding and wage tax purposes. On balance, petitioners have convinced us that Ms. Knowles was employed in Mr. Knowles's business during 1999 and 2000 and received wages for her labor in at least the amounts reported on the 1999 and 2000 Forms W-2, and we find accordingly.

We also believe that Ms. Knowles worked in the business at least 20 hours a week in each of the years at issue. Mr. Knowles's failure to track or record Ms. Knowles's work hours weighs against petitioners, Ms. Knowles nevertheless credibly testified that she worked approximately 20 to 22 hours a week. Respondent questions whether, generally, Ms. Knowles's described duties legitimately could occupy her for 20 hours a week. While the question is close, we are persuaded that they could and find that they did.

Petitioners were entitled to deduct wages reported as paid to Ms. Knowles on the Forms W-2 issued by Mr. Knowles of $2,980 and $3,120, for 1999 and 2000, respectively.

At trial, respondent conceded that the amounts claimed on petitioners' 2000 Schedule C for premiums on the medical policy and for out-of-pocket medical expenses were actually paid for those purposes, and we find accordingly. We find the same for

1999. While the evidence is sparse as to whether the Life Investors policy is in fact the medical policy, petitioners' bank account records for 1999 and 2000 show payments to Life Investors for premium payments, and we assume and find they are the same policy. We also find that Ms. Knowles was the primary policyholder under the medical policy during 1999 and 2000. We further find that Mr. Knowles paid the premiums on the medical policy for 1999 and 2000, thus entitling petitioners to deduct the payments in determining the profits of the business, see sec. 1.162-10, Income Tax Regs., and entitling Ms. Knowles to exclude the payments from gross income, see sec. 106(a). The 2000 out-of-pocket expenses are a different story. There is no evidence that they were paid solely for Ms. Knowles and, with respect to the medical plan, while family members are included for purposes of major medical and hospital insurance premiums reimbursement, the medical plan fails to specify whether family members are included for purposes of reimbursement of uninsured medical expenses. Petitioners have failed to show that the 2000 out-of-pocket medical expenses were paid pursuant to the medical plan and are therefore deductible under section 162. We sustain respondent's disallowance of $8,078 deducted on petitioners' 2000 Schedule C for out-of-pocket medical expenses.

The Disability Policy

There is a question as to who owned the disability policy during 1999. The parties have stipulated a copy of an undated application for a disability insurance policy from Ohio National Life Assurance Corporation/Cincinnati (the insurance application). The insurance application shows Mr. Knowles as the proposed insured and has three boxes under the heading "Owner Information", apparently allowing a check mark to show who the owner shall be. The three boxes are labeled "Proposed Insured", "Applicant", and "Other (Print Below)". "Applicant" is checked, although Ms. Knowles's name and address are printed below the box marked "Other (Print Below)". There is no indication on the insurance application as to who the applicant is. The parties have also stipulated a document that contains the policy specifications for a disability insurance policy from Ohio National Life Assurance Corporation/Cincinnati (the policy specifications) insuring Mr. Knowles and showing him as the owner of the policy. The policy specifications show that the policy was issued on January 16, 1996. The insurance application is ambiguous as to who is the owner of the policy; i.e., the unnamed applicant or Ms. Knowles. We therefore rely on the policy specifications to find that Mr. Knowles was the policy owner during 1999. We find that he was the owner during 1999 of the

disability policy.  The policy premiums are nondeductible personal expenses.  See sec. 262.

Conclusion

To reflect the foregoing,

Decision will be entered under Rule 155.